# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT H. ALAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 6501 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| UNITED STATES DEPARTMENT OF THE ) | |
| INTERIOR; RYAN ZINKE, Secretary of the ) | |
| United States Department of the Interior; ) | |
| UNITED STATES FISH AND WILDLIFE ) | |
| SERVICE; GREGORY J. SHEEHAN, Acting ) | |
| Director of the United States Fish and Wildlife ) | |
| Service, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Robert H. Aland filed suit challenging the removal of the Greater Yellowstone Ecosystem ("GYE") grizzly bear from the federal list of endangered and threatened wildlife under the Endangered Species Act ("ESA"), naming as Defendants the United States Department of the Interior; Ryan Zinke, Secretary of the Department of the Interior; the United States Fish and Wildlife Service (the "Service"); and Gregory J. Sheehan, the Acting Director of the Service. Aland specifically challenges the Service's June 30, 2017 issuance of a final rule (the "2017 Final Rule") that designates the GYE grizzly bear population as a distinct population segment ("DPS") and removes the GYE grizzly bear from the federal list of endangered and threatened species. *See* 82 Fed. Reg. 30502 (June 30, 2017). Defendants move to transfer the case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Montana, where five

related cases are pending.[1]  The Court grants the motion and transfers the case to the District of Montana.

## BACKGROUND

In 2007, the Service issued a Final Rule (the "2007 Final Rule") removing the GYE grizzly bear from the federal list of endangered and threatened wildlife.  Several groups of plaintiffs, including Aland, challenged the 2007 Final Rule.  Aland's challenge, filed in the Northern District of Illinois, was transferred to the District of Idaho, where another challenge by an environmental group had been filed.  An additional suit was filed by the Greater Yellowstone Coalition in the District of Montana.  In that case, the court vacated the 2007 Final Rule and remanded it to the Service.  *See Greater Yellowstone Coal. v. Servheen*, 672 F. Supp. 2d 1105, 1126–27 (D. Mont. 2009).  The Ninth Circuit upheld the vacatur of the 2007 Final Rule, affirming the district court's decision in part.  *Greater Yellowstone Coal. v. Servheen*, 665 F.3d 1015 (9th Cir. 2011).

On June 30, 2017, the Service published the 2017 Final Rule, again designating the GYE grizzly bear population as a DPS and removing it from the endangered and threatened species list.  The GYE area encompasses parts of Idaho, Montana, and Wyoming.  The 2017 Final Rule states that it "completes [the] remand order [arising from the *Greater Yellowstone Coalition* case]."  82 Fed. Reg. at 30503; *id.* at 30505 ("In this final rule, among the other findings, we respond to the District Court's remand and the Ninth Circuit's determination that the Service failed to support its conclusion that whitebark pine declines did not threaten GYE grizzly bears.").

---

[1] In addition to moving to transfer this case, Defendants recently filed a motion to stay the case in light of the Service's recently initiated administrative review of the 2017 Final Rule.  *See* Docs. 25–26.  Defendants also filed similar motions to stay in the cases pending in the District of Montana.  The Court finds it appropriate to resolve the motion to transfer before the motion to stay because the motion to transfer does not touch on the merits of the case.

2

On the same day the 2017 Final Rule was published, the Crow Indian Tribe filed a complaint challenging the 2017 Final Rule in the District of Montana. *Crow Indian Tribe v. United States*, No. CV 17-89-M-DLC (D. Mont.). Four additional lawsuits have been filed in the District of Montana challenging the 2017 Final Rule, all of which have been consolidated with the *Crow Indian Tribe* case. *See Humane Soc'y of the U.S. v. U.S. Fish & Wildlife Serv.*, No. CV 17-117-M-DLC (D. Mont.); *Wildearth Guardians v. Zinke*, No. CV 17-118-M-DLC (D. Mont.); *N. Cheyenne Tribe v. Zinke*, No. CV 17-119-M-DLC (D. Mont.); *All. for the Wild Rockies v. Zinke*, No. CV 17-123-M-DLC (D. Mont.). Aland filed his complaint *pro se* in this District on September 8, 2017.

## ANALYSIS

Section 1404(a) provides that the Court may transfer venue to another district "for the convenience of the parties and witnesses, in the interest of justice." For the Court to transfer the case under § 1404(a), Defendants must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). The transfer decision is committed to the Court's sound discretion because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).[2]

---

[2] Because the transfer analysis is fact-specific, although the Court has considered Aland's notice of subsequent development, Doc. 28, in which he refers the Court to *Contract Office Installations, Inc. v. Hollman, Inc.*, No. 1:17 CV 3729, 2017 WL 5890926 (N.D. Ill. Nov. 28, 2017), the Court does not find the transfer analysis in that case helpful here where the facts in *Contract Office Installations* are distinguishable.

**I.     Proper Venue**

While the parties do not contest that venue is appropriate here, Defendants also maintain that Aland could have brought his case in the District of Montana. Venue is proper in a district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Here, Defendants argue that a substantial part of the events giving rise to the claims occurred in Montana because the GYE grizzly bear is found there; the DPS is located in part in Montana, meaning that the Service relied on information and staff members in and around Montana in developing the 2017 Final Rule; the Service held public hearings and meetings with Native American tribes in Montana during the regulatory process leading up to publishing the 2017 Final Rule; and the 2017 Final Rule will impact Montana citizens and the Montana state government, which will have co-management responsibilities of the GYE grizzly bears under the 2017 Final Rule. Aland, however, contends that a majority of the GYE grizzly bears are found not in Montana but rather in Wyoming and that the main decisions on the 2017 Final Rule were made in Washington D.C. and Virginia, where Defendants have their headquarters.

"[V]enue may be proper in more than one district because, under § 1391(e)(2), 'there may be several districts that qualify as a situs of such substantial activities.'" *Aland v. Kempthorne*, No. 07-CV-4358, 2007 WL 4365340, at *2 (N.D. Ill. Dec. 11, 2007) (quoting David D. Siegel, *Commentary on 1988 and 1990 Revision of Section 1391*, 28 U.S.C.A. § 1391 (1993) at 9)). Here, Aland challenges the 2017 Final Rule removing the GYE grizzly bear from the federal list of endangered and threatened species. The District of Montana includes area covered by the DPS boundaries where the GYE grizzly bears are found. The 2017 Final Rule

4

specifies that the Service's Grizzly Bear Recovery Coordinator is located in Montana, suggesting that some decisionmaking occurred in Montana. *See* 82 Fed. Reg. 30502. And the Service based its findings on information gathered in and around Montana, as the 2017 Final Rule grounds itself on material facts derived from the DPS area, which includes Montana. Therefore, the Court finds venue appropriate in the District of Montana under 28 U.S.C. § 1391(e)(2). *See Aland*, 2007 WL 4365340, at *3 (rejecting Aland's same arguments against venue being proper in the District of Idaho with respect to the 2007 Final Rule, finding that a substantial part of the events giving rise to Aland's claims took place in Idaho because part of the DPS was located there, the Service considered comments from people in Idaho, and the Service based its findings on information gathered in and around Idaho); *Nw. Forest Res. Council v. Babbitt*, No. 93-1589 JHG, 1994 WL 908586, at *2 (D.D.C. Apr. 13, 1994) (venue proper in the Western District of Washington, which was where the population of marble murrelets resided and where the Service maintained field offices that helped formulate the challenged rule).

## II. Convenience of the Parties and Witnesses

Next, the Court turns to the convenience of the parties and witnesses, considering (1) Aland's choice of forum, (2) the situs of material events, (3) the relative ease of access to proof, (4) the convenience of the parties in litigating in the respective forums, and (5) the convenience of the witnesses. *Sojka v. DirectBuy, Inc.*, No. 12 C 9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014). Courts typically give a plaintiff's choice of forum substantial deference, particularly when he lives in the district, as Aland does here. *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999). But that deference is lessened "where the plaintiff's chosen forum . . . has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d

5

980, 992 (N.D. Ill. 2012); *see also Chicago, Rock Island & Pac. RR. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff" (citation omitted)). Here, none of the events relating to the 2017 Final Rule occurred in the Northern District of Illinois, with the only meaningful connection being Aland's residence in this District. Therefore, the Court gives little deference to Aland's choice of forum. *See Aland*, 2007 WL 4365340, at *3 (finding in Aland's suit challenging the 2007 Final Rule that little deference should be shown to his choice of forum because "no controverted question . . . depends on any event occurring in the Northern District of Illinois" (quoting *Chicago, Rock Island*, 220 F.2d at 304)).

Although sometimes decisive, in this case, the parties' and witnesses' locations do not weigh heavily in favor of this District or the District of Montana. Aland argues that litigating in the District of Montana would pose an inconvenience to him because he would have to travel and such travel would potentially interfere with his teaching responsibilities, where he teaches as an adjunct professor at Northwestern University Law School and is representing himself *pro se* in this matter. Defendants respond that transferring the case to Montana would not pose a hardship for Aland because he acknowledges in his complaint that he visits the GYE approximately seven to eight times each year. The parties agree that the case will largely be decided on the administrative record, meaning that the number of appearances required in Montana will be few, and Defendants indicate a willingness to accommodate Aland's schedule and any requests to appear by telephone in the District of Montana. Some of the Service's representatives responsible for the 2017 Final Rule are located in Montana, suggesting that, to the extent discovery or testimony is needed, Montana may be more convenient for Defendants than Illinois, where none of the material events allegedly occurred.

Additionally, the fact that this District has little connection to the underlying events weighs in favor of transfer. As discussed in connection with whether Montana constitutes a proper venue, no material events occurred in Illinois, while some events underlying the action occurred in Montana. To the extent Aland is allowed discovery to supplement the administrative record, presumably any witnesses and documents will be located either in the GYE area, including Montana, or in Washington, D.C. or Virginia. This favors transfer to Montana. Overall, then, the convenience factors slightly favor transfer, given that the 2017 Final Rule affects the GYE and there is no connection to this District aside from it being Aland's home forum. *See Aland*, 2007 WL 4365340, at *4 (finding that convenience analysis favored transfer to Idaho, one of the GYE states).

## III. Interest of Justice

In this case, the interest of justice proves more relevant to the Court's transfer analysis. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.*; *Coffey*, 796 F.2d at 220.

Here, among these factors, the Court finds it most important to consider the conservation of judicial resources, the relationship of the community to the controversy, and the desirability of resolving the controversy in each venue. The District of Montana has before it five consolidated cases challenging the 2017 Final Rule. Although not all of the claims raised in those cases are identical to those raised by Aland here, there is significant overlap among the cases so as to make

7

the chance of conflicting orders realistic.  *See Aland*, 2007 WL 4365340, at *5; *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 484 (N.D. Ill. 1987) (finding in favor of transfer when related suits involved common questions of law and fact despite not being identical claims). "[R]elated litigation should be transferred to a forum where consolidation is feasible." *Coffey*, 796 F.2d at 221.  Consolidation appears likely here if Aland's case is transferred based on the fact that the other pending cases in the District of Montana have already been consolidated for certain purposes.  Transfer would thus conserve judicial resources and allow for greater efficiencies, potentially also allowing for better coordination between Aland and the other groups challenging the 2017 Final Rule.

Moreover, Montana has a far greater interest in the disposition of this case than Illinois does.  Although individuals across the country may generally have an interest in conservation and the GYE grizzly bears, the three states that are home to the GYE grizzly bears, including Montana, have a special interest in the disposition of this and the other cases challenging the 2017 Final Rule.  These states "will inherit the primary management responsibility of the grizzly bears if the [2017] Final Rule remains in effect" and "have already spent a considerable amount of time and resources developing their state management plans." *Aland*, 2007 WL 4365340, at *5; *see also Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49–50 (D.D.C. 2006) (finding that although "the fact that Plaintiffs' claims invoke federal law, relate to the Everglades ecosystem, and are brought by a national environmental organization suggests that the case has a 'national aspect,'" Florida had a strong interest warranting transfer because the "management of Lake Okeechobee affects not only the snail kite, which is local to Southern Florida, but also navigation, flood control, agriculture, and municipal water supplies in South Central Florida"). Indeed, both the States of Wyoming and Idaho have both been granted leave to intervene in the

8

cases pending in the District of Montana, demonstrating the significant interests that the GYE states have in the controversy. Illinois does not have the same level of interest, as its resources are not implicated by the 2017 Final Rule or the challenges to that rule. Therefore, the interest of justice warrants transfer to the District of Montana so as to promote judicial efficiency and allow the controversy to be resolved in a venue with a strong connection to the issues.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to transfer [11]. The Court orders the Clerk to transfer this case to the United States District Court for the District of Montana.

Dated: January 9, 2018

_____
SARA L. ELLIS
United States District Judge